IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

M.F.[1],

        Plaintiff,

v.                                        Case No. 24-1213-JWB

FRANK BISIGNANO, Commissioner of Social Security,

        Defendant.

**MEMORANDUM AND ORDER**

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for supplemental security income. The matter is fully briefed and is ripe for decision. (Docs. 8, 12, 13.) For the reasons stated herein, the decision of the Commissioner is REVERSED and REMANDED.

**I.    Standard of Review**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept as adequate to support the conclusion. *Id.*

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). Nor will

---

[1] Plaintiff's initials are used to protect her privacy interests.

the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).

The Commissioner has established a five-step sequential evaluation process to determine disability. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); 20 C.F.R. § 416.920. At step one, the agency will find non-disability unless the claimant can show that she is not working at a "substantial gainful activity." *Id*. At step two, the agency will find non-disability unless the claimant shows that she has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id.* If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(iv). The RFC represents the most that the claimant can still do in a work setting despite her impairments. *See Cooksey v. Colvin*, 605 F. App'x 735, 738 (10th Cir. 2015). The RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 416.920(e), (f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that she cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003). To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487 (citations omitted).

## II.  Background and Procedural History

Plaintiff applied for supplemental security income, alleging a disability beginning October 3, 2022, when she was 39 years of age. (Tr. at 17, 29.) Plaintiff received a prior unfavorable decision on August 26, 2022. (Tr. at 17.) Plaintiff's claims were administratively denied both initially and upon reconsideration, prompting her to request a hearing before an Administrative Law Judge (ALJ). Plaintiff testified at a video hearing on January 3, 3024, before ALJ JoAnn Lyttle Draper. On March 7, 2024, the ALJ issued a written decision unfavorable to Plaintiff. (Tr. at 17–31.)

At step one, the ALJ found Plaintiff had not been engaged in substantial gainful activity since the alleged onset date. (Tr. at 19.) At step two, the ALJ found Plaintiff suffered from the following severe impairments: obesity status post gastric bypass with complication; panniculitis status post panniculectomy; hiatal hernia status post repair; degeneration of the cervical, thoracic, and lumbar spines; bilateral cubital tunnel syndrome status post bilateral release; bilateral carpal tunnel syndrome status post bilateral release; fibromyalgia; idiopathic progressive neuropathy; epilepsy; asthma; derangement medial meniscus of the right knee; major depressive disorder (MDD); generalized anxiety disorder (GAD); panic disorder; and post-traumatic stress disorder (PTSD). (*Id.* at 19–20.) At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or exceeded any impairment listed in the regulations. (*Id.* at 20–23.)

The ALJ next determined that Plaintiff has the RFC to perform light work, as defined in the regulations, in that she can lift, carry, push and/or pull 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for 4 hours in an 8-hour workday; can sit for a total of 6 hours in an 8-hour workday; can occasionally climb ramps and stairs; can perform frequent reaching in all directions, frequent handling, and fingering with the bilateral upper extremities; and can understand, and perform simple, routine, repetitive tasks in other than fast paced production environments.[2] (*Id.* at 22–23.)

In determining Plaintiff's RFC, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, but Plaintiff's statements as to the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical and other evidence. (Tr. at 24–25.) The ALJ reviewed medical and other evidence pertaining to Plaintiff's symptoms. The ALJ found prior administrative medical findings of agency physicians Dr. Lee and Dr. Wheeler somewhat persuasive. Those physicians offered objective findings and clinical signs as support for their opinions. Ultimately, the ALJ included greater limitations than opined by the physicians. (Tr. at 28–29.)

At step four, the ALJ found that Plaintiff was unable to perform past relevant work as a home attendant. (Tr. at 29.) At step five, the ALJ found that given Plaintiff's age, education, work experience, and RFC, there were three light unskilled jobs in the national economy in significant numbers that she could perform. (Tr. at 30.)

## III. Analysis

Plaintiff argues that the ALJ erred by rejecting Plaintiff's reported symptoms without failing to specify evidence in the record that conflicts with her reports. Plaintiff asserts that the

---

[2] This does not include all limitations identified by the ALJ. (Tr. at 17.)

ALJ did not comply with Social Security Ruling (SSR) 16-3p which states that the "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2016 WL 1119029, at *9. Plaintiff contends that the ALJ's decision fails to articulate specific reasons that Plaintiff's symptoms were not consistent with the evidence and asserts that her symptoms are consistent with the evidence and her treatment. In response, the Commissioner argues that substantial evidence supports the ALJ's decision and that Plaintiff is asking this court to reweigh the evidence.

"Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013) (quotation omitted). "[S]o long as the ALJ sets forth the specific evidence [s]he relies on in evaluating the claimant's credibility, [s]he need not make a formalistic factor-by-factor recitation of the evidence. Again, common sense, not technical perfection, is our guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

The ALJ stated she had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p." (Tr. at 24.) She explained the process for evaluating the claimant's allegations of symptoms and also identified the symptoms and the related impairments. With respect to Plaintiff's stated symptoms, Plaintiff testified that her pain starts at the base of her hairline and spreads out through her spine and legs and that moving

5

around and activity makes it worse. Her symptoms improved with sitting and lying down. She testified that she spends over half the day lying down and needs to frequently change her position. (Tr. at 53–54.) It is difficult to be on her feet. With respect to daily activities, Plaintiff reported lying in bed with nausea, having difficulty with personal care due to pain, cooking only simple meals and folding laundry but that her children do other household chores. She is capable of lifting a gallon of milk but it is painful. (Tr. at 24.)

The ALJ stated that Plaintiff's claims could cause these symptoms but that her statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely consistent with the medical evidence. (Tr. at 24–25.) The ALJ then recited some of the medical records as to her treatment history. With respect to Plaintiff's fibromyalgia diagnosis, the ALJ discussed that it was managed through her primary care provider who provides all her pain related medication. Plaintiff has complained of neck pain, right arm pain, right shoulder pain, and lower back pain. Plaintiff describes sharp pain and states that it is worsened with everything and improved with modified activity, rest, and Tylenol. (Tr. at 25.) Plaintiff reported shooting pain down her right arm and that her legs and arms feel like dead weights. Her pain was rated as a 6 with sleep, 6 with rest, and 7 with movement. The evidence shows that physical examination confirms cervical spasms that are tender to touch and multiple trigger points throughout the cervicothoracic region. An April 2023 MRI of the cervical spine showed normal alignment and well-preserved vertebral body heights and no abnormal signal in the cervical spinal cord. (*Id.*) Plaintiff manages her symptoms with various pain medications. She has also been treated for right arm pain and numbness, which was felt to be ulnar neuropathy based on positive Tinel's sign at the elbow. Physical therapy has not been helpful but a stretching program has provided temporary

relief.  The ALJ also noted that a medication change in April 2022 significantly improved her quality of life and that her pain had improved.  (Tr. at 26.)

Plaintiff argues that the medical evidence actually supports her symptoms and the ALJ did not specifically identify the evidence that contradicts her allegations.  The Commissioner argues that the ALJ need not specifically discuss each symptom identified by a claimant and identify why that allegation is contradicted by the medical evidence.  The court agrees with the Commissioner that the decision need not be so exacting (*see Michael H. v. Kijakazi*, No. CV 21-1295-JWL, 2022 WL 17555305, at *9 (D. Kan. Dec. 9, 2022)); however, the court ultimately finds that the ALJ's findings were not closely and affirmatively linked to substantial evidence demonstrating inconsistency with Plaintiff's alleged symptoms.

The Commissioner argues that the ALJ found that despite her complaints of pain Plaintiff demonstrated normal functional abilities, including a normal gait, normal range of motion, no focal deficit, no motor weakness, and no sensory deficit.  (Doc. 12 at 7–8.)  But the ALJ's decision does not link these normal findings with her decision to discount Plaintiff's symptoms regarding her pain.  Rather, those normal findings are thrown in a discussion which includes evidence of muscle spasms, "multiple taut bands that are exquisitely tender to touch and radiate with palpitation, tenderness and bony tenderness of the cervical spine."  (Tr. at 25.)  Further, there is no citation to the record for the statement regarding a normal exam although the ALJ does cite the record at the end of the paragraph.  Upon review of those record pages, it appears the ALJ is discussing a May 5, 2023, note from the pain management clinic at Saint Luke's Hospital.  This note does state that Plaintiff has normal range of motion in her cervical back and her gait was normal.  However, the note clearly indicates that there is a sensory deficit which is contrary to the representation in the ALJ's decision that there was no sensory deficit.  (Tr. at 25.)  According to the medical record,

"hyperalgesia to the legs, arms, neck and back" was "present" upon examination. (Tr. at 1678.) The medical record also indicates that Plaintiff was ill-appearing. The Tenth Circuit has held that the ALJ "cannot mischaracterize or downplay evidence to support his findings." *See Kellams v. Berryhill*, 696 F. App'x 909, 912 (10th Cir. 2017). Therefore, this statement regarding normal findings does not entirely support the ALJ's decision to discount Plaintiff's complaints as it does not appear to be accurate unless the ALJ is citing from another record. Rather, the record cited lends support to Plaintiff's complaints. Further, as noted by Plaintiff, the lack of objective findings is not determinative of the severity of fibromyalgia. *See Gilbert v. Astrue*, 231 F. App'x 778, 784 (10th Cir. 2007).

Next, the Commissioner argues that the ALJ properly discounted Plaintiff's complaints when finding that a stretching program provided Plaintiff with some relief and a change in medication improved her quality of life and functionality. (Doc. 12 at 9.) Again, the ALJ does not specifically state that she is discounting Plaintiff's pain symptoms due to these events. However, with respect to the stretching program, it was noted that this helps "temporarily." (Tr. at 26.) The record also reflects that physical therapy is not helpful to Plaintiff nor is chiropractic care. (*Id.*) Further, as to the medication change, this medical note was from April 2022, which was prior to Plaintiff's alleged onset date in October 2022. Therefore, the note in May 2023 that was extensively discussed by the ALJ would be a more accurate record to evaluate Plaintiff's alleged symptoms and medication effectiveness. Further, the record indicates that Plaintiff's providers have administered trigger point injections for her pain in July and September 2023. (Tr. at 1854, 1857.) Plaintiff's complaints of pain and her symptoms on those visits were consistent with her prior report in May 2023.

8

Finally, the Commissioner argues that the ALJ determined that Plaintiff's activity level contradicted her report of disabling fibromyalgia symptoms. The court disagrees. First, the ALJ did not state that she was discounting Plaintiff's symptoms due to the daily activities and, second, the ALJ's discussion of Plaintiff's limited daily activities does not support a finding that Plaintiff can sustain gainful employment. With respect to daily activities, the ALJ stated that Plaintiff makes simple meals and folds laundry but that her children do other household chores. (Tr. at 24.) The ALJ also noted that Plaintiff has pain with her own personal hygiene. Although Plaintiff can drive herself to appointments, the amount of daily activity cited by the ALJ is not such a wide range of activity that would support regular work. (Tr. at 23, 24) (citing to record which reflects that Plaintiff goes to the store "3x a month" and the "kids will take [her] sometimes," and she can only do "dishes and fold laundry with breaks.") (Tr. at 627–28.)

In support of his position, the Commissioner cites to *Lykins v. Colvin*, 657 F. App'x 726, 729 (10th Cir. 2016). In that matter, the ALJ specifically noted that the "allegations of disabling pain were inconsistent with her daily activities, noting she was able to care for herself and her two young children, prepare meals, clean, go outside, walk, drive a car, and go shopping." *Id.* The Tenth Circuit also noted that the ALJ relied on continued improvement after surgery and with physical therapy. *Id.* Moreover, the plaintiff in *Lykins* reported significant improvement after surgery to her treating physician. Here, the evidence of improvement is in April 2022 prior to the onset date and Plaintiff reports no improvement from physical therapy. Moreover, Plaintiff's daily activities are not equivalent to the plaintiff in *Lykins*. Plaintiff's daily activity level in this case cannot lead this court to uphold the ALJ's decision in light of the other deficiencies identified herein.

Finally, the ALJ's decision does not point to significant inconsistencies in the record with regard to Plaintiff's allegation of other symptoms, including the inability to sit for long periods, to take breaks to lay down, and to frequently change positions to account for her pain but yet the RFC does not appear to account for these limitations.

The Commissioner argues that the court need only be able to "trace the path of the ALJ's reasoning" to uphold the decision. (Doc. 12 at 10.) The court agrees with the statement which is supported by S.S.R. 16-3P requiring the ALJ to clearly articulate the decision so that the court "can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3P, 2016 WL 1119029, at *9. However, the court cannot trace the path in this case. In sum, the ALJ did not closely and affirmatively link her findings discounting Plaintiff's complaints regarding her fibromyalgia symptoms to substantial evidence. Therefore, this matter must be remanded so that the ALJ can reevaluate Plaintiff's fibromyalgia symptoms.

**IV.     Conclusion**

The Commissioner's decision shall be REVERSED and judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case for further proceedings consistent with this decision.

IT IS SO ORDERED. Dated this 7th day of July 2025.

   s/ John W. Broomes
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE
